## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

RONNIE SELBY,

      Plaintiff,

    v.                           CASE NO.:  6:17-cv-00642-RBD-GJK

CREDIT ONE BANK, N.A.,

      Defendant.

_____/

## DEFENDANT, CREDIT ONE BANK, N.A.'S, MOTION TO DISMISS AND COMPEL ARBITRATION AND INCORPORATED MEMORANDUM OF LAW

Defendant, Credit One Bank, N.A., (Credit One), through counsel and pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3) the Federal Rules of Civil Procedure and the Federal Arbitration Act (FAA), 9 U.S.C. §§ 2–4, hereby moves the Court for the entry of an Order compelling Plaintiff Ronnie Selby to pursue his claims in arbitration and dismissing Plaintiff's lawsuit with prejudice, or in the alternative, Credit One moves the Court for the entry of an Order staying these proceedings and compelling Plaintiff to pursue his claims in arbitration.

As explained in detail below, Plaintiff's claims against Credit One are subject to mandatory binding arbitration pursuant to the underlying credit card agreement for Plaintiff's credit card account at issue.  In fact, the United States District Court for the Middle District of Florida, the United States District Court for the District of New Jersey, the United States District Court for the Middle District of Tennessee, United States District

1

Court for the Western District of New York, the United States District Court for the Southern District of New York, and the United States District Court for the Eastern District of Pennsylvania analyzed the identical arbitration clause and compelled arbitration in similar cases against Credit One.  *See, e.g., Lawrence DiLorenzo v. Credit One Bank, N.A.*, No. 8:16-cv-02524-MSS-ASS (M.D. FL April 27, 2017)  *A.D. v, Credit One Bank, N.A.*, 2016 WL 4417077 (N.D. Ill. Aug. 19, 2016); *Youssofi v. Credit One Financial* et al., Case No. 3:15-cv-01764, ECF 27 (S.D. Cal. July 7, 2016); *Beattie v. Credit One Bank*, 2016 WL 4203511 (N.D. N.Y. Aug. 9, 2016); *Babb v. Credit One Financial*, 2016 WL 3959646 (M.D. Fla. July 22, 2016); *Boule v. Credit One Bank*, 2016 WL 3015251 (S.D. N.Y. May 11, 2016); *Bridge v. Credit One Financial*, 2016 WL 1298712 (D. Nev. March 31, 2016); *Bubay v. Credit One Bank*, No. 2:15-cv-02831-KSH-CLW, ECF 18 (D. N.J. March 24, 2016); *Garrett v. Credit One Bank, N.A. et al.*, No. 2:15-cv-08865-RSWL-PLA, ECF 20 (C.D. Cal. Feb. 29, 2016); *Griffin v. Credit One Financial*, 2016 WL 538242 (E.D. Pa. Feb. 11, 2016); *Velez v. Credit One Bank*, 2016 WL 324963 (E.D. N.Y. Jan. 25, 2016); *Carr v. Credit One Bank*, 2015 WL 9077314 (S.D. N.Y. Dec. 16, 2015); *Cal v. Credit One Bank, N.A.*, No. 15-cv-3641-MAS-TJB, ECF 15 (D. N.J. Dec. 16, 2015); *Ellin v. Credit One Bank*, 2015 WL 7069660 (D. N.J. Nov. 13, 2015); *Salerno v. Credit One Bank, N.A.*, 2015 WL 6554977 (W.D. N.Y. Oct. 29, 2015); *Bibee v. Credit One Bank*, 2015 WL 5178700 (M.D. Tenn. Sept. 4, 2015); *Rice v. Credit One Financial*, 2015 WL 4528933 (E.D. N.C. July 27, 2015); *Montgomery v. Credit One Bank*, 848 F. Supp.2d 601, 606-07 (S.D. W.Va. 2012).

In light of the above cases and for the reasons set forth below, this Court should order Plaintiff to pursue his claims against Credit One in arbitration and dismiss Plaintiff's claims with prejudice.  Alternatively, the Court should stay this case and require Plaintiff to arbitrate his claims.

## I.   PROCEDURAL HISTORY AND BACKGROUND

On or about April 10, 2017, Plaintiff filed this action alleging Credit One violated the Florida Consumer Collection Pactices Act (FCCPA), Fla. Stat. § 559, *et seq*., and the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, *et seq*.   Plaintiff alleges to be a "consumer/debtor" and that Credit One continued to autodialed his cellular telephone to collect a "consumer debt" (his past due Credit One credit card account) after Plaintiff told Credit One to stop calling him.  (Dkt. 1, ¶¶ 15-16, 22, 25-28, 34).   According to Plaintiff, he "expressly revoked any express consent Defendant may have mistakenly believed it had for placement of telephone calls to [his] aforementioned cellular telephone numbers by the use of an ATDS or a pre-recorded or artificial voice." *Id.* at ¶35.  Plaintiff also claims that he told  "a representative for Defendant, in no uncertain terms, that they must 'cease and desist all phone calls; if they continue, I will seek legal action against you.'" *Id.*  Plaintiff claims that the telephone calls continued despite his requests for the calls to stop.

Plaintiff's lawsuit should be dismissed and/or stayed because he agreed to binding arbitration of any and all disputes arising out of his Credit One credit card account. Plaintiff's Cardholder Agreement for the account provides "you or we may, without the

other's consent, require that any controversy or dispute between you and us (all of which are called 'Claims'), be submitted to mandatory, binding arbitration." *See, e.g.,* Exhibit A, Affidavit of Gary Harwood[1] in Support of Credit One Bank N.A.'s Motion to Dismiss and Compel Arbitration, referencing Ex. A-3, Cardholder Agreement.

On or around May 5, 2016, Credit One transmitted a credit card solicitation letter to Plaintiff with a unique reservation number of SD15-BB25-3NSC.  Ex. A, Aff. of Gary Harwood at ¶ 7.  A sample copy of the solicitation letter set to Plaintiff (which also contains the first seven digits of Plaintiff's unique reservation number) is attached as Exhibit A-1. On May 20, 2016, Plaintiff applied for a credit card account ending in 4904 (the "Account") and a screenshot of information that Plaintiff filled out relative to his application is attached as Exhibit A-2.  Ex. A at ¶ 11.  Plaintiff's cellular number is listed on his application.  See Ex. A-2.

Page one of the disclosure pages of the pre-approved solicitation offer disclose terms and conditions applicable to Plaintiff's Account, including arbitration.  For example,

---

[1] Mr. Harwood is the Vice President of Portfolio Services at Credit One.  Ex. A, Harwood Affidavit, ¶1. One of Mr. Harwood's duties is to monitor and oversee Credit One's accounts.  Ex. A, ¶2. Mr. Harwood's Affidavit indicates that he has access to account records and is fully familiar with how account records are created and maintained. Ex. A, ¶¶3-6. In particular, Mr. Harwood reviewed the records related to Plaintiff's account.  If called as a witness, Mr. Harwood could testify to a court competently as to his personal knowledge of the background facts contained within his Affidavit (the facts specific to Plaintiff and the arbitration related language contained on relevant documents are discussed within the body of this Memorandum).  The following are the relevant background facts related to Credit One's maintenance of credit card account solicitations, acceptance of solicitations and the terms and conditions of credit card accounts. First, Credit One maintains complete records of all credit card accounts it holds. Ex. A, ¶3. Such records include, but are not limited to, all documentation relating to the account, amount advanced to the account holder, principal debt balance due, date of payments received, interest accruals and date of interest payments made. *Id.* Second, account records are maintained by Credit One at or near the time of the acts or events described in the preceding paragraph. Ex. A, ¶4. Third, account records are maintained in the course of regularly conducted activity of Credit One. Ex. A, ¶5.

pre-approved Credit Once solicitation offer sent to Plaintiff received contained the

following pertinent language:

> **ACCEPTANCE**:  If I am approved, my card(s) will be issued and I agree to pay all charges incurred in accordance with the terms and conditions of the Cardholder Agreement, Disclosure Statement, and Arbitration Agreement ("Agreement"), which will be sent with my card.  I understand that my Account will be subject to the terms and conditions of the Cardholder Agreement, Disclosure Statement and Arbitration Agreement ("Agreement") . . . .

Exhibit A, ¶ 10 (referencing Exhibit A-1, p. 1 of 2).  Further, the solicitation sent to Plaintiff

disclosed the existence of binding arbitration:

> **ARBITRATION AGREEMENT:** You agree that either you or we may, without the other's consent, require that any dispute between you and us be submitted to mandatory, binding arbitration.  Complete details will be in the Agreement sent with your card.

Exhibit A, ¶ 10 (referencing Exhibit A-1, p. 2 of 2).

> Finally, the "**ACKNOWLEDGMENT**" language on the solicitation offer states:

> By submitting this Acceptance Certificate, I acknowledge I have read the terms and conditions on this Acceptance Certificate and agree to be bound by these terms.

*Id.*  at p. 2.

A true and correct sample of the VISA/MASTERCARD Cardholder Agreement,

Disclosure Statement and Arbitration Agreement ("Cardholder Agreement"), which

governs the account and relationship between Plaintiff and Credit One, is attached hereto

as Exhibit A-3.  Exhibit A, ¶ 12.  Credit One enclosed a copy of the Cardholder Agreement

in the same envelope as the credit card when it mailed Plaintiff the credit card for activation

and Credit One has not record of any return mail from Plaintiff.  *Id*. at ¶¶ 13-14.

The Agreement, in relevant part, identified that Credit One could call Plaintiff's cellular phone with automatic telephone dialing systems in relation to the collection of his account:

> **19. COMMUNICATIONS:** You are providing express written permission authorizing Credit One Bank or its agents to contact you at any phone number (including mobile, cellular/wireless, or similar devices) or email address you provide at anytime, for any lawful purpose. The ways in which we may contact you include live operator, automatic telephone dialing systems (auto-dialer), prerecorded message, text message or email. Phone numbers and email addresses you provide include those you give to us, those from which you contact us or which we obtain through other means. Such lawful purposes include, but are not limited to: obtaining information; activation of the card for verification and identification purposes; account transactions or servicing related matters; suspected fraud or identity theft; collection on the Account; and providing information about special products and services . . . .

Exhibit A-3, p. 4.

Paragraph 30 of the Agreement provides that "The Arbitration Agreement provided to you with this Agreement governs the enforcement by you and us of your and our legal rights under this Agreement."  Accordingly, the complained of phone calls to Plaintiff (as alleged in his lawsuit) are subject to arbitration.

The existence of arbitration language is clearly identified within the Agreement. Under the heading "<u>ARBITRATION</u>" the Agreement says, in large scale, bold font:

> PLEASE READ THIS PROVISION OF YOUR CARD AGREEMENT CAREFULLY. IT PROVIDES THAT EITHER YOU OR WE CAN REQUIRE THAT ANY CONTROVERSY OR DISPUTE BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY A NEUTRAL ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT. IN

ARBITRATION, YOU MAY CHOOSE TO HAVE A HEARING AND BE REPRESENTED BY COUNSEL.

According to the terms of the Arbitration language, either party may compel arbitration for any dispute relating to the handling of the Account including but not limited to "communications relating to your account" and "collection matters relating to your account." Exhibit A-3, p. 6. The Arbitration language provides that "[c]laims subject to arbitration include Claims based on any allegations of fact, including an alleged act, inaction, omission, suppression, representation, statement, obligation, duty, right, condition, status or relationship. *Id.*

The Agreement provides that Arbitration applies to Plaintiff, Credit One and claims related to third parties working with or for Credit One: "Claims subject to arbitration include not only Claims that relate directly to us, a parent company, affiliated company, and any predecessors and successors (and the employees, officers and directors of all of these entities), but also Claims for which we may be directly or indirectly liable, even if we are not properly named at the time the Claim is made." Exhibit A-3, p. 6.

Arbitration applies to "[c]laims based on any theory of law including statute, tort (including fraud or intentional tort), and common law based upon any allegation of fact, including an alleged act, inaction, omission, suppression, representation, statement, obligation, duty, right, condition, status or relationship". *Id.* Moreover, the Agreement expressly provides that "[a]ny questions about what Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced." *Id.* Finally, the Agreement explains how a filing fee will be paid, waived

or reimbursed (should Credit One lose) and the Agreement also explains that a losing party will not be required to pay the prevailing party's fees. *Id*. at pp. 6-7.

Plaintiff activated the credit card ending in 4904 on or around June 5, 2016 and made charges to the credit card and payments on the account. Exhibit A, ¶¶ 15-16; and Exhibit A-4, Account Statements. Under these facts, Plaintiff accepted the terms and conditions of the Cardholder Agreement, including, submitting his claims to Arbitration by requesting, receiving, and signing his credit card, as well as by charging purchases to the card and making payments on the Account. Exhibit A at ¶ 17 (referencing Exhibit. A-3).

## II.    LAW AND ARGUMENT

*A.     Plaintiff Bears the Burden to Establish This Lawsuit Should Not Be Dismissed.*

Courts routinely "treat motions to compel arbitration as motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)" or as "a motion seeking dismissal based on an agreement to arbitrate . . . under Rule 12(b)(3)" since "[a]n arbitration clause is simply a type of forum-selection clause." *MRI Scan Ctr., LLC v. Natl. Imaging Assocs., Inc.,* 2013 WL 1899689, at *2 (S.D. Fla. May 7, 2013); *Johnson v. Orkin, LLC*, 556 Fed. Appx. 543, 544 (7th Cir. 2014) (unpublished) (internal citations omitted); *see also Grasty v. Colorado Tech. U.*, 599 Fed. Appx. 596, 597 (7th Cir. 2015) (unpublished); *Aggarao v. MOL Ship Mgt. Co., Ltd.,* 675 F.3d 355, 366 (4th Cir. 2012); *Hayes v. Delbert Servs. Corp.*, 2015 WL 269483, at *1 (E.D. Va. Jan. 21, 2015); *Wal-Mart Stores, Inc. v. Helferich Pat. Licensing, LLC*, 51 F. Supp. 3d 713, 721 (N.D. Ill. 2014).

Nevertheless, under either Rule 12(b)(1) or 12(b)(3), the Court "may consider matters beyond the pleadings." *Fields v. NCR Corp.*, 683 F. Supp. 2d 980, 984 (S.D. Iowa 2010).  Moreover, Plaintiff bears the burden of proving jurisdiction and venue or his complaint will be dismissed.  *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).

B.    *A Strong Federal Policy Exists Favoring Arbitration.*

The FAA provides written contracts to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  This strong language manifests a "liberal federal policy favoring arbitration agreements."  *Moses J. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  Thus, courts are directed to "rigorously enforce agreements to arbitrate." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (internal quotation marks omitted) (citation omitted).

In April of 2011, the United States Supreme Court reaffirmed the FAA's "liberal federal policy favoring arbitration," reinforced the "fundamental principle that arbitration is a matter of contract," and directed that "courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms."  *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745, 179 L.Ed.2d 742, 751 (2011) (internal citation omitted).  On January 10, 2012, the Supreme Court of the United States again confirmed the enforceability of arbitration clauses.  *See Compucredit Corp. v. Greenwood*, 132 S.Ct. 665 (2012).  In *Greenwood*, the Court considered whether the FAA requires an arbitration agreement to be enforced in suits brought pursuant to the Credit Repair

Organizations Act (CROA), which is silent on whether CROA claims can proceed in arbitration. Writing for the majority, Justice Scalia was blunt: the creation of a statutory cause of action is not enough to imply an exception to the FAA rule validating arbitration agreements. *Id.* at 670. The Court held:

> It is utterly commonplace for statutes that create civil causes of action to describe the details of those causes of action, including the relief available, in the context of a court suit. If the mere formulation of the cause of action in this standard fashion were sufficient to establish the 'contrary congressional command' overriding the FAA, valid arbitration agreements covering federal causes of action would be rare indeed. But that is not the law.

*Id.*

The FAA "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009). "In particular, the FAA provides that as a matter of federal law '[a] written provision' in a maritime or commercial contract showing an agreement to settle disputes by arbitration 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract.'" *Id.* (quoting 9 U.S.C. § 2). "Congress designed the FAA to overrule the judiciary's longstanding reluctance to enforce agreements to arbitrate and its refusal to put such agreements on the same footing as other contracts, and in the FAA expressed a strong federal policy in favor of resolving disputes through arbitration." *Id.* (citations omitted).

"In deciding whether claims are subject to arbitration, a court must consider (1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether

the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011) (citing *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.,* 307 F.3d 24, 28 (2d Cir. 2002)); *see also Mehler v. Ther Terminix Int'l Co., L.P.*, 205 F.3d 44, 47 (2d Cir. 2000).

Understandably, the standard for demonstrating arbitrability is not high. The court's only role when presented with a question of arbitrability is to determine (1) whether a valid arbitration agreement exists and (2) whether the scope of the parties' dispute falls within that agreement.

C.   <u>*Plaintiff Agreed to Arbitrate His Claims Against Credit One.*</u>

As explained above, when Plaintiff opened the Account, he agreed to submit all disputes relating to his credit card Account to arbitration.  Exhibit A at ¶ 18, incorporating ¶¶ 7-8, 10-17; Exhibit A-3, pp. 6-7.  Plaintiff received notice of the arbitration provision twice before he used the credit card.  The first time took place when he received Credit One's solicitation offer disclosures and second took place when he received the Cardholder Agreement terms enclosed with his credit card (which he activated and subsequently used).  Exhibit A at ¶¶ 7-10, 12-17; Exhibit A-2; Ex. A-3.  Accordingly, pursuant to Credit One's policy to include the applicable Cardholder Agreement containing the arbitration clause when mailing the credit card to the customer, Plaintiff received the Cardholder Agreement as evidenced by his, application for and activation of the credit card, as well as his use of the card to make purchases.  Exhibit A at ¶ 7-18.

The evidence shows Plaintiff agreed to the terms of the Cardholder Agreement; therefore, the Cardholder Agreement creates a binding contract requiring Plaintiff to

arbitrate all disputes relating to the Account.  Exhibit A-3, pp. 6-7.  Further, this arbitration provision specifically mandates that it shall be governed by, and enforceable under, the FAA.  *Id.*   Therefore, the first element of Credit One's motion to dismiss and compel arbitration is undeniably satisfied.

D.    *Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement.*

Plaintiff's claims against Credit One all relate to the Account and as such fall within the scope of the arbitration agreement governing the Account.  Plaintiff alleges Credit One violated the FCCPA and TCPA when attempting to contact his about his delinquent Account. (Dkt. 1).  As discussed above, the arbitration applies to claims related to attempts to communicate with Plaintiff as well as debt collection activities.  Exhibit A-3, p. 6 (referencing "communications relating to your account" and "collection matters relating to your account").

Under the Agreement, either party may initiate the arbitration. *See id*. The Agreement provides arbitration is to be conducted in accordance with the rules and procedures of either of two nationally recognized arbitration administrators—the American Arbitration Association or JAMS.  Exhibit A-3, p. 6.  Regarding the location, arbitration hearings are to take place at a location in the same city as the U.S. District Court closest to Plaintiff's billing address. *See id*.  The Agreement further provides if Plaintiff prevails at arbitration on any claim, Credit One will reimburse Plaintiff for his filing fee (if Plaintiff paid a filing fee). *Id.*., p. 7.  In addition, Credit One will pay the arbitrator's fee for the first day of any arbitration hearing. *Id*. a pp. 6-7.

There no doubt Plaintiff's claims against Credit One fall within the substantive

scope of the arbitration provisions of the Agreement.  District courts across the county have reviewed an identical arbitration clause and held TCPA claims follow within the scope of the arbitration agreement.  *See e.g. Ellin,* 2015 WL 7069660 ("In fact, Plaintiff's TCPA claim undoubtedly falls within the purview of the arbitration clause; that is, Defendant's alleged violation of the TCPA unquestionably pertains to a collection matter relating to Plaintiff's credit card account, as Defendant's telephone call was prompted by Plaintiff's alleged delinquency. Moreover, Plaintiff's TCPA claim clearly falls within the meaning of 'any controversy or dispute' as defined by the scope of the arbitration clause."); *Bibee*, 2015 WL 5178700 (enforcing an identical arbitration agreement in a TCPA case); *Salerno*, 2015 WL 6554977 ("Considering the breadth of this language, and in light of the federal policy requiring courts 'to construe arbitration clauses as broadly as possible . . .,' the court cannot conclude with positive assurance that the arbitration provision of the Cardholder Agreement is not susceptible of an interpretation that covers the claims asserted in the amended complaint regarding Credit One's liability under the TCPA for its communications with Plaintiff relating to his credit card account.  Accordingly, the court finds that the second element of the arbitrability inquiry is satisfied provision of the Cardholder Agreement."); *Cal, N.A.*, No. 15-cv-3641-MAS-TJB, ECF 15 (D. N.J. Dec. 16, 2015) (enforcing an identical arbitration agreement in a TCPA case); *Bubay*, No. 2:15-cv-02831-KSH-CLW, ECF 18 (D. N.J. March 24, 2016) ("Because the arbitration agreement includes any matter "relating to the credit card account" or "the resulting relationship between [Bubay] and [Credit One]," the Court determines that Bubay's TCPA claim is within the scope of the arbitration agreement."); *Boule*, 2016 WL 3015251("Accordingly,

the Court finds that the claims alleged in Plaintiff's Complaint fall within the scope of the arbitration provision in the Agreement between the parties.")

Accordingly, both elements of a motion to compel have been met: (1) a valid agreement to arbitrate exists, and (2) the dispute falls within the scope of that agreement. Thus, this Court should find Credit One is entitled to invoke the arbitration provisions of the Agreement and accordingly dismiss this instant action and compel Plaintiff to pursue arbitration.

### III.   CONCLUSION

WHEREFORE, Defendant, Credit One Bank, N.A., respectfully requests this Court dismiss Plaintiff's claims against Credit One, or, in the alternative, enter an order staying this matter and compelling Plaintiff to pursue his claims against Credit One in arbitration, and for such other and further relief as this Court deems proper.

Dated: June 12, 2017

Respectfully submitted,

*/s/ Michael P. Shutte*
Michael P. Schuette, Esq.
Florida Bar No. 0106181
Dayle M. Van Hoose, Esq.
Florida Bar No. 0016277
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C.
3350 Buschwood Park Drive, Suite 195
Tampa, Florida 33618
Telephone: (813) 440-2472
Facsimile: (866) 466-3140
mschutte@sessions.legal
dvanhoose@sessions.legal

*Attorneys for Defendant,*
*Credit One Bank, N.A.*

14

## CERTIFICATE OF SERVICE

I certify that on June 12, 2017, a copy of the foregoing was filed electronically in the ECF system.  Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system, including Plaintiff's counsel as described below. Parties may access this filing through the Court's system.

William Peerce
Stefan Alvarez
The Consumer Protection Firm, PLLC
210 A South MacDill Avenue
Tampa, FL 33609
Sstefan@theconsumerprotectionfirm.com
Billy@theconsumerprotectionfirm.com

*/s/ Michael P. Schuette*

15